UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

------------------------------------------------------------X
                                              )   No.2:13-cv-00017 JLR
"AMY",                                        )   **DECLARATION OF JAMES R.**
                           Plaintiff,         )   **MARSH IN SUPPORT OF AMY'S**
v.                                            )   **MOTION FOR PREJUDGMENT**
                                              )   **WRIT OF ATTACHMENT**
JOSHUA OSMUN KENNEDY,                         )   **AND ORDER SETTING BOND**
                           Defendant.         )
                                              )   NOTE ON MOTION CALENDAR:
------------------------------------------------------------X   May 24, 2013

I, JAMES R. MARSH, hereby declare under penalty of perjury that the following is true and correct:

I represent the plaintiff "Amy" in this action (Amy).

I am making this Declaration in support of Amy's motion for a prejudgment writ of attachment of defendant Joshua Osmun Kennedy's ("Kennedy") assets and to set a bond at $500.

I am admitted to practice law in the State of New York and the District of Columbia. I am also admitted in the Ninth Circuit and pro hace vice in this Court to represent Amy in this action.

The requested writ of attachment is not sought to hinder, delay, or defraud any of Kennedy's creditors.

I have good reason to believe and do believe that, as explained below: (i) Kennedy is indebted to Amy pursuant to 18 U.S.C. §§ 2225(a) and 2255(A)(f) which provide statutory

DECLARATION OF JAMES MARSH - 1                           LAW OFFICE OF
                                                         JO-HANNA READ
                                                         2200 Sixth Ave., #1250
                                                         Seattle, WA  98121
                                                         (206) 441-1980
                                                         (206) 441-5803 Fax

compensation to a plaintiff who is a victim of a defendant's transportation and possession of child pornography (with respect to Section 2255 in an amount not less than $150,000 for each violation of the statute); and, (ii) two or more of the grounds stated in RCW 6.25.030 for issuance of a writ of attachment exist.

## THE BASIS FOR THE DECLARATION

In making this Declaration and arriving at the above-stated belief, I have relied on my personal knowledge and the following documents:

(1)     Amended Judgment in *United States v. Joshua Osmun Kennedy* (Western District of Washington, Case No. 08-cr-354), dated April 21, 2010, attached hereto as Exhibit 1 (Ex. 1);

(2)     Amy's Victim Impact Statement, attached hereto as Exhibit 2 (Ex. 2);

(3)     Psychiatric Evaluation of Amy by Joyanna L. Silberg (Silberg Report), dated November 21, 2008, attached hereto as Exhibit 3 (Ex. 3);

(4)     Smith Economics Group, Ltd. Report determining Amy's economic and value of life damages (SEG Report), dated September 15, 2008, attached hereto as Exhibit 4 (Ex. 4);

(5)     Transcript of August 25, 2009 trial testimony of Derrick Donnelly, the government's computer forensics expert, explaining his determination that Kennedy's computer contained 30 "active" files and over 5,000 cached files of child pornography, attached hereto as Exhibit 5 (Ex. 5);

(6)     Report of Michelle Breland, the government's medical expert, describing some of the child pornography found on Kennedy's computer, dated August 6, 2009, attached hereto as Exhibit 6 (Ex. 6);

(7)     Kennedy's letter to the Court regarding sentencing in which he admits to the criminal conduct and takes responsibility for the harm he caused, filed February 8, 2010, attached hereto as Exhibit 7 (Ex. 7);

(8)     The Ninth Circuit's decision in *United States v. Kennedy*, 643 F.3d 1251 (9th Cir. 2011), affirming Kennedy's conviction and holding that his possession of Amy's child sex abuse images caused harm to Amy, filed July 11, 2011, attached hereto as Exhibit 8 (Ex. 8);

Declaration of James Marsh - 2

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA  98121
(206) 441-1980
(206) 441-5803 Fax

(9) Amy's Request for Restitution in *United States v. Joshua Osmun Kennedy* (Western District of Washington, Case No. 08-cr-354), dated January 7, 2010, attached hereto as Exhibit 9 (Ex. 9).

(10) Sentencing Hearing excerpts in *United States v. Joshua Osmun Kennedy* (Western District of Washington, Case No. 08-cr-354), dated February 19, 2010, attached hereto as Exhibit 10 (Exhibit 10).

(11) Restitution Hearing Transcript excerpts in *United States v. Joshua Osmun Kennedy* (Western District of Washington, Case No. 08-cr-354), dated April 21, 2010, attached hereto as Exhibit 11 (Ex. 11).

(12) Copies of RCW 6.13.010, 6.13.030, 6.13.040 and 6.15.060, attached hereto as Exhibit 12 (Ex. 12).

## FACTS

### I. KENNEDY'S ARREST FOR POSSESSION OF CHILD PORNOGRAPHY

On November 9, 2007, Kennedy arrived at Sea-Tac Airport from an overseas trip. (Ex. 8, *Kennedy*, 643 F.3d at 1252).

After a secondary inspection of his baggage by the U.S. Customs and Border Patrol revealed images on his laptop computer of an "underage-looking" nude female "in different sexual positions," Kennedy's computer was seized. *Id.*

Kennedy was arrested and charged with criminal transportation and possession of child pornography in violation of federal statutes.

At Kennedy's criminal trial, forensic expert Derrick Donnelly, Chief Technology Officer of Black Bag Technologies, testified that he conducted the examination of Kennedy's computer. (Ex. 5).

Donnelly's examination revealed that Kennedy had a long and frequent history over a two-year period of accessing websites containing child pornography. (Ex. 5 at 39-40).

DECLARATION OF JAMES MARSH - 3

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

1   Donnelly testified that he found 30 images of child pornography in "active" files and over

2   5,000 images of child pornography in deleted cache files. (Ex. 5 at 50-55, 94-95, Ex. 8, *Kennedy*,

3   643 F.3d at 1253).

4   Kennedy hid the active child sex abuse images in a directory he named "taxes 2003."

5   (Ex. 5 at 18-19).

6   The government's medical expert, Michelle Breland, examined some of the images found

7   on Kennedy's computer and wrote a report describing them. (Ex. 6).

8   Among the horrific and disturbing images that Kennedy saved in the active file directory

9   called "taxes 2003" were: (i) an image of an adult woman performing oral sex on a male infant.

10  (Ex. 6, Image # 19); (ii) several images of a child under the age of twelve being forced to engage in

11  oral sex with an adult male (Ex. 6, Images ## 55 and 117); and, (iii) several images of children

12  being subjected to bondage and torture (a nude child in a bathtub being urinated on by an adult

13  male (Ex. 6 Image #784), and several images of a child bound with black string in a bed (Ex. 6

14  Images ## 12236 and 12254).

15  **II.   THE DETERMINATION THAT KENNEDY POSSESSED AMY'S**
16  **      CHILD SEX ABUSE IMAGES**

17  Upon information and belief, once law enforcement encountered suspected child

18  pornography, they submitted the material found on the Kennedy's computer to the National

19  Center for Missing and Exploited Children (NCMEC) which maintains a Child Victim

20  Identification Program (CVIP). (Ex. 8, *Kennedy*, 643 F.3d at 1255 n. 8).

21  NCMEC hosts a database containing known images of child pornography.

Declaration of James Marsh - 4

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

1   Among the images in the NCMEC database is a set known as the Misty Series which
2   depicts Amy.
3   Upon information and belief, the Misty Series features images of Amy as a pre-pubescent
4   girl being forced to perform a series of extremely graphic sexual acts, including oral copulation,
5   anal penetration, and masturbation, with an adult man.
6   Upon information and belief, according to law enforcement officials, the Misty series has
7   been actively collected and traded since 1998.
8   CVIP analysts at NCMEC matched 17 images on Kennedy's computer to images of Amy
9   in NCMEC's database and notified the government of its positive identification in a CVIP report.
10  (Ex. 8, *Kennedy*, 643 F.3d at 1256).

### III. KENNEDY'S CONVICTION, HIS POST-CONVICTION/PRE-SENTENCING CONFESSION AND APOLOGY TO VICTIMS, AND THE DISTRICT COURT'S SENTENCE

14  On August 27, 2009, after a three-day trial, a jury convicted Kennedy of one count of
15  transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1) and one count of
16  possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Ex. 1 & Ex. 8,
17  *Kennedy*, 643 F.3d at 1254).
18  After he was convicted but before sentencing, Kennedy confessed to his crimes and
19  acknowledged that he harmed child victims which included Amy. In a pre-sentencing letter to the
20  judge seeking leniency, Kennedy wrote, "I…accept responsibility for the crime I committed. I
21  viewed and downloaded images of child pornography. I am horrified by my actions…." He also
22  told the court that (i) "I fully support all of the laws that protect children;" (ii) "I am horrified

Declaration of James Marsh - 5

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA  98121
(206) 441-1980
(206) 441-5803 Fax

that I helped perpetuate a market for child abuse;" (iii) "I feel horrible for what was done to these kids;" and, (iv) "[t]here is no doubt that I deserve punishment." (Ex. 7).

During the sentencing hearing, the Court asked Kennedy whether he wanted to say anything before sentence was pronounced. In response, Kennedy made the following statements to the child pornography victims whose images he possessed and transported:

> Your Honor, I'll just take a moment to apologize to the girls in the pictures.... ***
>
> I want to apologize to the court for breaking the law I fully support, and for violating my pretrial supervision twice. ***
>
> I want to apologize to the victims who have already suffered such horrible atrocities and to how I further victimized them. I have no excuse. I'm sorry.

(Ex. 10, Sentencing p. 47 ln. 15-16, p. 47 ln. 25- p. 48 ln.2, p. 48 ln. 6-8). In making these statements, Kennedy acknowledged that the victims—including Amy—had "suffered ... horrible atrocities," and that his criminal acts of possessing and transporting images of their child sex abuse added to his victims' suffering.

Although the district court dismissed the possession count as a lesser-included-offense of the transportation count (Ex. 1 & Ex. 8, *Kennedy*, 643 F.3d at 1254), the court rejected a number of Kennedy's arguments. The court rejected Kennedy's assertion that his criminal conduct was essentially victimless.

> [O[ftentimes individuals come before this court on these type of charges and make statements to the court or suggest to the court that 'I'm different. I don't have direct contact with the children. I've never touched them,' and that it is a victimless crime.
>
> ***
>
> [C]an you imagine, sir if there were photographs or videos of each of those encounters [of your sexual abuse], and someone put each of them, in living color on the Internet for the entire world to see, not just once, but again and again, and to be in a stream of access

DECLARATION OF JAMES MARSH - 6

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA  98121
(206) 441-1980
(206) 441-5803 Fax

forever? Certainly, sir, you'd have to agree that you would not consider this type of conduct to be victimless occurrences.

(Ex. 10, p. 51 ln. 4-8, p. 51 ln. 24- p. 52 ln.6).

The district court also rejected Kennedy's declaration that he should be treated differently than those who made the images.

> [I]ndividuals who come before this court...profess...they're not under the same circumstances that the people who made the images, that actually participated in this pornographic conduct. But the problem is, Mr. Kennedy, is that without people who possess or transport child pornography, the industry would have a very difficult time surviving. In fact, I strongly suspect that a considerable percentage of the pornographic industry is predicated upon people who consider themselves to be nothing more than just plaint viewers, people just like you, folks that think, 'I'm not hurting anybody. I don't come in contact with any of these kids. I'm just looking.' Unfortunately, the people in the business of creating child pornography, they tailor their marketing strategy to meet the viewers' demands. ***
>
> There's a basic fundamental business: If you have no market, the industry would collapse.
>
> You and your child pornography-viewing fraternity helped support the market in the child pornography industry....

(Ex. 10, p. 52 ln. 7-21, p. 53 ln.1-8 ).

Kennedy was sentenced to 60 months in prison and 15 years of supervised release. He appealed his conviction.

**IV. THE RESTITION PROCEEDINGS**

Invoking their rights under 18 U.S.C. § 2259, Amy—along with another victim known as "Vicky"—sought restitution from Kennedy. (Ex. 9). As detailed below, in connection with the restitution proceedings, Kennedy admitted that he failed to disclose all of his assets to the Court, the Court found that Kennedy had misrepresented his assets, and the Court awarded restitution to both Amy and Vicky.

Declaration of James Marsh - 7

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

### A. Kennedy's Admission That He Secreted Assets And The Court's Finding That He Misrepresented His Finances

The Government alleged that Kennedy, in a sworn statement, deliberately misrepresented to the Court his assets and withheld information about his ownership of a boat. At the restitution hearing, Kennedy admitted that he failed to disclose the boat in his sworn statement:

> Q. And you admitted that you neglected to mention the boat in your financial affidavit?
>
> A. Yes.

(Ex. 11, p. 26 ln. 1-3). Although Kennedy claimed that his failure to disclose the boat was an oversight—"I just missed it" (Ex. 11, p. 22 ln. 6-7)—Kennedy acknowledged that he knew the accuracy of his financial statement was important:

> Q. And you knew it was important to be accurate when you filled out this affidavit?
>
> A. I did. I absolutely did.

(Ex. 11, p. 26 ln. 20-22). Kennedy also admitted that he failed to disclose three accounts at financial institutions. (Ex. 11, p. 22 ln. 8-25).

When Kennedy's attorney tried to explain that it was his fault that Kennedy was not more "careful" in preparing his financial statement, the Court rejected his excuse:

> THE COURT: *** In terms of accepting responsibility or falling on the sword, so to speak, who is more culpable in the financial disclosure, isn't there a section on that form you're your client is required to sign that states, 'The foregoing information is true and correct to the best of my knowledge'?
>
> MR. LEVY: I'm sure there is, Your Honor.
>
> THE COURT: And if your client signed that, wouldn't that indicate to the court as to Pretrial Services that he had read the content of that document and was expected to be truthful?
>
> MR. LEVY: I'm sure it would, Your Honor.

DECLARATION OF JAMES MARSH - 8

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

(Ex. 11, p. 6 ln. 24 – p. 7 ln. 9).

The Government also introduced evidence showing that after Kennedy was arrested he specifically sought information about sheltering his assets. Kennedy admitted this. (Ex. 11, p. 5 ln. 4-8, ln. 9-25). Significantly, in seeking to rebut these allegations, Kennedy's attorney explained that the reason for Kennedy's inquiries was not the restitution proceedings but a letter from an attorney in Dallas threatening to sue Kennedy under various child pornography statutes (presumably an attorney raising claims similar to Amy's claims in this case):

> We received, in November, a letter from a civil attorney in Dallas threatening to sue Mr. Kennedy for his responsibility under the various child pornography and federal restitution statutes, and I have had the clerk mark that letter as an exhibit…. ****
>
> That is what sparked discussion between Mr. Kennedy and myself concerning his potential civil liability and potentially an interest, on his part, in asset protection.
>
> At the time that we had this discussion, it was before we were aware of the government's restitution request.

(Ex. 11, p. 5 ln. 9-13, 18-22; *see also* Ex. 11, p. 18 ln. 20-21 (admitting letter from Dallas attorney)). Kennedy freely acknowledged that he investigated strategies to shield his assets from plaintiffs in civil suits such as this one.

Based on this evidence, the district court concluded that Kennedy displayed a "lack of candor on his part regarding his true financial picture." (Ex. 11, p. 49 ln. 1-2).

**B.    Amy's Evidence Detailing The Harms She Suffered, Kennedy's Admission That Amy Was Harmed, And The Order To Kennedy To Pay Amy $17,000 In Restitution**

Amy submitted evidence detailing the harms she suffers as a result of the possession and trading of her child sex abuse images. (Ex. 8, *Kennedy*, 643 F.3d at 1263).

Declaration of James Marsh - 9

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA  98121
(206) 441-1980
(206) 441-5803 Fax

As Amy explained in her restitution request, when she was 8 and 9 years old she was raped and sexually exploited in order to produce child sex abuse images for consumers and collectors of child pornography. (Ex. 9, p. 2). The primary reason Amy was raped and forced to endure cunnilingus, fellatio and digital penetration was to provide child pornography for an end user-collector whose demand for child sex abuse images directly led to her physical and psychological abuse and exploitation. (Ex. 9, p. 2). The worldwide distribution of Amy's images continues to this day in an unbroken chain. (Ex. 9, p. 2)

As Amy explained in her victim impact statement:

> I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop [the abuse]. The truth is, I am being exploited and used every day and every night somewhere in the world by someone. How can I ever get over this when the crime that is happening to me will never end? How can I get over this when the shameful abuse I suffered is out there forever and being enjoyed by sick people?

(Ex. 2, p. 1 & p. 3).

As Dr. Silberg explained in her psychological evaluation of Amy:

> [A]t the age of 17, Amy was informed through legal notifications about the widespread presence of her picture on the internet, illustrating to her that in some ways the sexual abuse of her has never really ended. This knowledge further exacerbated her symptoms, interfered with her ability to overcome the increasing symptoms of post traumatic stress, and impeded her ability to move on with her life.
>
> * * *
>
> [T]here has been a resurgence of the trauma with her ongoing realization that her image is being traded on the internet. Specifically, Amy mentions fear of discovery, shame, fears of the traumatization of others, and renewed self-blame about her participation.

(Ex. 3, p. 3 & p. 4); *see also* Ex. 3, p. 10 ("The ongoing awareness that the pictures are out there interferes significantly with the therapeutic resolution of these problems, as she lives in an enduring state of feeling that she can never really escape or get away from the abuse.").

Declaration of James Marsh - 10

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

1    As Amy explained in her Victim Impact Statement, "Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated again. It hurts me to know someone is looking at them—at me—when I was just a little girl being abused for the camera." (Ex. 2, p. 1).

After evaluating Amy and reviewing relevant records, Dr. Silberg drew the following conclusions to a reasonable degree of psychological certainty:

> The sexual assault perpetrated against Amy, and its continued memorialization in pictures which continue to be traded and used affect her in a variety of ways, and has long lasting and life changing impact on her.
>
> Specifically, she has experienced significant effects in the following areas: Mood regulation, cognitive distortions, feelings of shame, self-blame, and guilt, self-esteem, alcohol abuse, dissociation, academic progress, interpersonal relationships, and vocational success. In addition, despite some resolution of Amy's post-traumatic symptoms when she was younger, Amy continues to have the hallmark feature of posttraumatic stress disorder which includes intrusive images, attempts at avoidance and denial, and hyper arousal.
>
> These posttraumatic symptoms and effects of sexual abuse are more resistant to treatment than those that would normally follow a time limited trauma, as her awareness of the continued existence of the picture and their criminal use in a widespread way leads to an activation in these symptoms. She is flooded with memories of what happened to her, since she knows at any moment others might see these. She tries to avoid this knowledge with unhealthy coping strategies…and she is overwhelmed with feelings of shame, self-blame and guilt. Planning for the future becomes difficult as planning involves thinking and processing her fears of the reality of these images, that she does not want to face or re-experience. Difficulty with planning and the presence of dissociation has led to her inability to follow through with educational and vocational plans. Furthermore Amy has ongoing problems with trust in relationships which has interfered with working with authorities in jobs and interpersonal relationships.

(Ex. 3, p. 8).

The government also submitted a report to the district court detailing Amy's damages. The SEG Report calculated that Amy's discounted, present value, net economic losses to age 67 include (i) earnings of $2,855,173 (assuming work to age 67); and, (ii) costs of counseling of

Declaration of James Marsh - 11

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

$512,681. (Ex. 4, p. 11). In addition, the SEG Report determined that Amy will suffer $8.8 million in diminished value and enjoyment of life. (*Id.*).

Significantly, at the criminal restitution hearing, Kennedy's attorney admitted that Amy suffered serious harm as a result the mass distribution of her child sex abuse images on the Internet:

> We don't dispute the seriousness of [Amy and Vicky's] losses. We don't dispute the fact that the victims suffer severely because of the knowledge that their exploitation was disseminated over the internet.

(Ex. 11, p. 41 ln. 6-9).

Kennedy's attorney went on to contend, however, that since Amy at that time did not have notice of Kennedy's individual possession and transportation of her images, proximate cause was lacking such that restitution could not be imposed against him. (Ex. 11, p. 41 ln. 11-13 ("[T]here is not one mention of Mr. Kennedy. There's no indication whatsoever that Mr. Kennedy—that these victims were aware of Mr. Kennedy.")).

The district court ordered Kennedy to pay Amy $17,000 in restitution or $1,000 for each of the 17 child sex abuse images he possessed of Amy. (Ex. 1 & Ex. 8, *Kennedy*, 643 F.3d at 1256).

Kennedy appealed the restitution order.

**V. THE NINTH CIRCUIT'S AFIRMANCE OF KENNEDY'S CONVICTION AND SENTENCE, THE NINTH CIRCUIT'S DETERMINATION THAT KENNEDY'S POSSESSION OF AMY'S CHILD SEX ABUSE IMAGES CAUSED HER SERIOUS HARM, AND THE REVERSAL OF THE RESTITUTION AWARD FOR LACK OF PROXIMATE CAUSE**

On appeal, the Ninth Circuit affirmed Kennedy's conviction and sentence. (Ex. 8, *Kennedy*, 643 F.3d at 1266).

Declaration of James Marsh - 12

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

Concerning restitution, the Ninth Circuit specifically held that Kennedy's criminal conduct caused Amy serious harm. (Ex. 8, *Kennedy*, 643 F.3d at 1263). The Court of Appeals observed, "Amy's victim impact statement explained that she was 'a real victim of child pornography because the dissemination of the images meant that she was being exploited and used every day and every night somewhere in the world by someone,'" and that "[b]ecause of the pictures, '[w]hat happened to me hasn't gone away. It will never go away.'" (Ex. 8, *Kennedy*, 643 F.3d at 1255).

The Court of Appeals concluded:

> The psychological evaluation confirmed that Amy had experienced 'a resurgence of…trauma' upon learning that the images were circulating on the Internet: '[Amy] feels that her privacy has been invaded on a fundamental level [and] fears the unknown and unnamed people who continued to be looking at these pictures of her for their own perverse interests or to 'groom' other children into these acts.'

(Ex. 8, *Kennedy*, 643 F.3d at 1255 (quoting the Silberg Report)).

The Ninth Circuit determined that Kennedy's possession of Amy's child sex abuse images was an actual cause of her personal injuries:

> Amy…presented ample evidence that the viewing of [her] images caused [her] emotional and psychic pain, violated [her] privacy interests, and injured [her] reputation and well-being.

(Ex. 8, *Kennedy*, 643 F.3d at 1263).

On this basis, the Court concluded that Amy was a "victim," as that term is defined in Section 2259(c):

> Even without evidence that Amy…knew about Kennedy's conduct, the district court could reasonably conclude that **Amy…[was] 'harmed as a result of' Kennedy's participation in the audience of individuals who viewed the images….** We therefore hold that **Amy [is] a victim[] of Kennedy's offense**.

(*Id.* (emphasis added; internal citations omitted)).

Declaration of James Marsh - 13

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

1   The Ninth Circuit also concluded that proximate cause was lacking because Amy failed to show
2   that she knew about Kennedy's misconduct prior to seeking restitution from him. (Ex. 8,
3   *Kennedy*, 643 F.3d at 1263-64). The appellate court reversed the district court's restitution award
4   of $17,000 to Amy, and Amy recovered nothing from Kennedy.
5   Amy, however, has long been aware of Kennedy and the facts of this case. For at least a
6   year, Amy has received materials relating to Kennedy's numerous appeals and ongoing litigation
7   in his criminal case. She is aware of the facts of the criminal case underlying this civil action
8   including Kennedy's possession and transportation of her child sex abuse images in violation of
9   federal law, his continued appeals, and her loss of restitution in the criminal case. Kennedy's
10  criminal and tortious actions have contributed to Amy's emotional distress and her related
11  personal injuries.

12  **VI.   AMY'S COMMENCEMENT OF THIS ACTION**

13  Amy filed this action in January, 2013. Since Kennedy was convicted of a felony—and
14  because of Kennedy's prior history of secreting assets and his demonstrated desire to shield his
15  assets from civil liability from claims by child victims such as Amy—Amy filed this motion for
16  prejudgment attachment of his property.
17  Pursuant to RCW 6.25.070(4), copies of RCW 6.13.010, 6.13.030, 6.13.040 and 6.15.060
18  are annexed as Exhibit 12.

19  **VII.  KENNEDY'S PROPERTY**

20  Upon information and belief, Kennedy owns real property located at 5520 17th Avenue,
21  NE, Seattle, WA 98105-3417, legally described as follows:
22  Tax Parcel ID No. 861580-0400-09

Declaration of James Marsh - 14

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax

>Lot 5, Block 7, Thompson's University Addition to the City of Seattle, according to the plat thereof recorded in Volume 11 of Plats, Page 88, records of King County, Washington. Situate in the County of King, State of Washington.

>Commonly known as: 5520 17th Avenue Northeast, Seattle, WA 98105

In addition, Kennedy owns a houseboat said to be located at 3236 ½ Portage Bay Pl E, Seattle, WA 98102, described as follows:

>A floating home located at 3236 ½ Portage Bay Pl E, Seattle, WA 98102, bearing KCA #500, with all necessary fixtures and appurtenances attached thereto.

>PERSONAL PROPERTY TAX #B3-4200-069589-04

Finally, Kennedy deposited $17,000 with the Clerk of Court in United States District Court for the Western District of Washington Case 08-cr-354 as restitution owed to Amy.

## VII.  REQUEST TO SET A BOND AT $500

The Plaintiff in this case, Amy, is a young woman who is a victim of child pornography. Due to Kennedy's intentional criminal conduct in transporting and possessing images of Amy's child sex abuse, his criminal conviction after trial for transporting child pornography, the affirmance of that conviction by the Ninth Circuit, his refusal to take any responsibility for his criminal acts, and the lack of a meritorious defense to the claims in this case, we ask the Court to exercise its discretion and set bond at $500. Further, the setting a bond at $500 is appropriate because the attachment of Kennedy's real property, houseboat and monies already deposited with this Court is for security only and does not deprive Kennedy of the ownership, actual use, or physical possession of that property. Among other things, Kennedy can continue to collect any and all rents from his tenants, if any, and he retains the continued use and enjoyment of his property pending the outcome of this case. There is little if any actual harm or prejudice to

Declaration of James Marsh - 15

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA  98121
(206) 441-1980
(206) 441-5803 Fax

Kennedy as a result of any attachment. He is well-represented by counsel and any sudden need to sell or transfer the property can be reviewed by this Court subject to any claims by the Plaintiff.

**WHEREFORE,** we ask the Court to issue a prejudgment writ of attachment of Defendant Joshua Osmun Kennedy's assets, to set a bond or undertaking in the amount of $500, and for such additional relief as the Court deems just and proper.

Dated: May 8, 2013

                s/James R. Marsh
                James R. Marsh

DECLARATION OF JAMES MARSH - 16

LAW OFFICE OF
JO-HANNA READ
2200 Sixth Ave., #1250
Seattle, WA 98121
(206) 441-1980
(206) 441-5803 Fax